**The below described is SIGNED.**

**Dated: May 10, 2006**

_____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Larry Wayne Niccum and Merial Gene Niccum, aka Merial Gene Page,<br><br>Debtors. | Bankruptcy Number: 05-23329<br><br>Chapter 7 |
| Goldenwest Credit Union,<br><br>Plaintiff,<br><br>vs.<br><br>Larry Niccum,<br><br>Defendant. | Adversary Proceeding Number:<br><br>05-2158 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Goldenwest Credit Union (Goldenwest) objects under 11 U.S.C. § 523(a)(6)[1] to the dischargeability of a debt owed to it by Larry Niccum (Niccum). Goldenwest argues that the debt, which arose from a line of credit it extended to Niccum, was the result of a willful and malicious injury because Niccum continued to access the still open line of credit after selling the property securing the debt. The Court, however, concludes that Niccum did not intend to injure Goldenwest by his actions, as demonstrated by the fact that he continued to make payments on the line of credit for almost 10 years after he sold the property that served as collateral. Therefore, Goldenwest has failed to show that its injury was the result of a willful action for § 523(a)(6) purposes, and the Court finds that the debt at issue is dischargeable.

A trial was conducted and the proceeding was taken under advisement. This is a core matter and the Court may enter a final judgment.[2] The Court has considered the evidence properly before it, has judged the credibility of the witnesses, and has made an independent inquiry into the applicable case law. For the reasons discussed below, the Court rules as follows.

## I. FINDINGS OF FACT

In 1987, Niccum obtained a line of credit from Goldenwest secured by real property located in Ogden, Utah (Collateral). Between July 1987 and July 1994, Niccum applied for funds from the line of credit by signing four loanliner advance request vouchers containing the language "I certify that I have not sold any interest in this real property for this requested advance." Niccum was still the owner of the Collateral at the time he signed each of these

---

[1] All future statutory references are to title 11 of the United States Code unless otherwise indicated.

[2] 28 U.S.C. § 157(b)(2)(I)

vouchers and, therefore, was truthful in attesting that he had not sold any interest in the Collateral. The Collateral was then sold in November 1994, at which time the line of credit was paid in full and Goldenwest's lien interest in the Collateral terminated.

Goldenwest, however, mistakenly failed to close out the line of credit in its computer system. Beginning in May 1995, Niccum resumed accessing the line of credit using an automated telephone system provided by Goldenwest, and continued to do so over the subsequent years. In most years he accessed the line of credit for various amounts and made regular payments in the amount required by Goldenwest, but at least in 1997 he did not access the line of credit at all but continued to make monthly payments. Over the period of years from 1995 to 2004, Niccum borrowed approximately $50,000 and made payments in excess of $43,000. Niccum's last payment on the line of credit was made in March of 2004. Thereafter, Niccum defaulted on his payments to Goldenwest, and Goldenwest sought and obtained a judgment against him in state court for $20,797.02, including fees and costs.

On March 9, 2005, Niccum filed a joint Chapter 7 voluntary petition with this Court in part because of a failed real estate venture. On his schedules he listed a nonpriority unsecured claim held by Goldenwest in the amount of $18,602. Goldenwest commenced the current adversary proceeding objecting to the dischargeability of the debt at issue on April 1, 2005, claiming that Niccum wilfully and maliciously injured it by continuing to access the line of credit after he sold the Collateral.

The Court held a trial on May 5, 2006, during which time Goldenwest focused extensively on the fact that Niccum accessed the line of credit using Goldenwest's automated phone system. This was a service Goldenwest made available to all of its members. If a line of

credit was accessed by the automated phone system, Goldenwest did not review the account. If the line of credit had been accessed in person through a teller, Niccum would have had to sign a voucher containing the statement that *this* property had not been sold. It would also have prompted Goldenwest to review the account, at which time, Goldenwest asserts, it would have found that the line of credit was not collateralized and that it had improperly allowed access to the account. Although Goldenwest maintains over 1,000 collateralized lines of credit, it does not conduct any regular audit procedure to determine if the accounts are properly collateralized. Regardless, Goldenwest argued that Niccum's use of this automated system somehow supports its claim that he intended to injure Goldenwest. The Court fails to see how Niccum's method of accessing the line of credit using the automated system, which Goldenwest provided for conducting such transactions, provides circumstantial evidence that preponderates in supporting this contention. Furthermore, Niccum testified at trial that, in continuing to access the line of credit after he sold the Collateral, it was not his intent to injure Goldenwest or any property right it might have possessed. Rather, he testified that he intended to repay Goldenwest. The Court finds Niccum's testimony to be credible. In weighing that credible testimony against the inference that he used the automated phone system to avoid discovery that the line of credit was not collateralized, the Court finds that Niccum did not intend to injure Goldenwest but instead intended to repay the loan. This determination is sustained by Niccum's 10-year history of payments on the line of credit following the disposition of the Collateral.

## II. CONCLUSIONS OF LAW

In order to except a debt from discharge under § 523(a)(6), the creditor must prove by a preponderance of the evidence that the alleged injury was both willful and malicious.[3] The creditor can establish that the injury was willful by either direct evidence, or indirectly by showing that the debtor had knowledge of the creditor's lien rights and that the debtor had knowledge that his actions would cause an injury to those rights.[4] As the Supreme Court has explained, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury* not merely a deliberate or intentional *act* that leads to injury."[5] The injury may be to "another entity or to the property of another entity," and the Court is required to consider both options in analyzing a § 523(a)(6) complaint.[6] Therefore, in order to establish that the injury was willful the creditor must prove, either directly or indirectly, that the debtor intended to cause an injury to either the creditor or the creditor's property rights.

### A. Niccum Did Not Intend to Injure Goldenwest

In the present action, there is no direct evidence that Niccum intended to injure Goldenwest itself. Goldenwest argues that since Niccum continued to access the line of credit after the Collateral had been sold, he has acted willfully for § 523(a)(6) purposes. However, the fact that Niccum continued to draw upon the line of credit after the sale of the Collateral using

---

[3] *See Grogan v. Garner*, 498 U.S. 279, 291 (1991).

[4] *See Mitsubishi Motors Credit of Am., Inc. v. Longely (In re Longley),* 235 B.R. 651, 657 (BAP 10th Cir. 1999).

[5] *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 61 (1998) (emphasis in original).

[6] Section 523(a)(6)

the automated phone system does not prove that he acted with an intent to cause injury to Goldenwest. To the contrary, Niccum testified that he did not intend to injure Goldenwest by drawing upon the line of credit. As stated above, the Court found Niccum's testimony to be credible especially in light of the fact that it is supported by 10 years worth of payments that Niccum made on the line of credit. All Goldenwest has demonstrated is that Niccum intentionally acted in such a way as to eventually cause it injury, which is not sufficient to support a claim of nondischargeability under § 523(a)(6).[7] There has been no showing that Niccum intended to injure Goldenwest itself. Rather, Niccum accessed the line of credit with the intent repay it, which is exactly what he did for nearly a decade.

Goldenwest has also failed to show by indirect evidence that Niccum intended to cause it injury. Goldenwest argues that Niccum knew of Goldenwest's lien rights in the Collateral, and knew that his actions would injure those rights. Therefore, Goldenwest contends that the injury it sustained was willful for § 523(a)(6) purposes. The Court is unpersuaded by this argument. At the time Niccum sold the Collateral, he paid off the line of credit and, as stated above, Goldenwest's lien rights terminated. Therefore, Goldenwest simply had no lien right that Niccum could have injured.

Goldenwest also points to the four loanliner advance request vouchers Niccum signed between July 1987 and July 1994 containing the language that he had not sold any interest in *this* real property as evidence that Niccum's actions were willful for § 523(a)(6) purposes. The Court fails to see the relevance of these loanliner agreements. The last of these four agreements was signed in July 1994, four months before Niccum sold the Collateral. Therefore, Niccum was the

---

[7] *See In re Geiger*, 523 U.S. at 61.

owner of the Collateral at the time he signed each of the loanliner agreements and truthfully attested that he had not sold his interest in the Collateral at that time. Goldenwest has not presented any loanliner agreements Niccum signed after he sold the Collateral. The inference Goldenwest asks the Court to draw is that Niccum knew if he requested an advance in person he would have to sign an advance request voucher stating he had not sold *this* real property, and therefore, this is proof that he intended to injure Goldenwest. The Court declines to make this leap and fails to see how the proffered request vouchers preponderates in support of Goldenwest's position.

### B. Niccum Did Not Injure Any Property Rights of Goldenwest

Goldenwest has also failed to show that Niccum willfully injured its property rights. Goldenwest admits that, upon the sale of the Collateral, the line of credit was paid off in full and it then released the trust deed and note securing its rights in the Collateral. At that point, Goldenwest's interest in the Collateral ceased. Therefore, as discussed above, Niccum could not have injured Goldenwest's property rights subsequent to the sale of the Collateral because Goldenwest had no property rights following the disposition. Goldenwest, perhaps erroneously but of its own volition, advanced money to Niccum from the line of credit. He accepted it with the intent to repay and, in fact, did so for a period of almost 10 years.

### III. CONCLUSION

Since a plaintiff must establish that the injury was both willful and malicious in order to succeed on a § 523(a)(6) complaint,[8] Goldenwest's failure to prove the willful element serves to defeat its Complaint and it is not necessary to determine whether the injury was malicious. The

---

[8] *See Grogan*, 498 U.S. at 291.

Court, therefore, holds that the debt at issue is dischargeable. A judgment dismissing the Complaint will issue contemporaneously herewith.

_____END OF DOCUMENT_____



_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW** will be effected through the Bankruptcy Noticing Center to each party listed below.

Timothy W. Blackburn
Van Cott, Bagley, Cornwall & McCarthy, P.C.
2404 Washington Blvd.
Ogden, UT 84401-2330
 *Attorney for Plaintiff*

Steven R. Bailey
2454 Washington Blvd.
Ogden, UT 84401-2312
 *Attorney for Defendant*

Larry Niccum
1979 South 1320 East
Ogden, UT 84401-0879
 *Defendant*